And now I will call the next case of Justin Oltmanns versus International Longshoremen's Association Local and Checkers Union and others. Good morning. Are you Mr. Wolfe? Yes, I am. All right, you may proceed. Thank you. Okay, thank you. Thank you, Your Honors, for the opportunity to present oral argument in this case. I represent the plaintiff, Appellant Justin Oltmanns. He's a member of the Union International Longshoremen's Association, 1475, working in the port of Savannah. At all times relevant to the case, Mr. Oltmanns held a position in the union as a clerk and a checker, and at the union's direction from time to time, he would be assigned to do deck and dockman work. Just briefly, the deck and dockman work on the decks of ships and on the docks next to the ship. They are doing clerical work, organizing and keeping meticulous track of where containers are, where they should be, getting them moved to the proper place. And the checkers are off-site, land-bound, and arranging for transportation to and from the dock. So I thought that background might help explain the sort of arcane terminology, or it was arcane to me, at least, when it first started. So the case is filed under Section 301 of the Labor and Management Relations Act. Mr. Oltmanns needs to plead a breach of contract against the employer, which is the Georgia Stevedores Association, or GSA. He also needs to plead a duty of, a breach of the duty of fair representation by the union. And the issue, this is a motion to dismiss, of course, it comes to this court on a motion to dismiss, an order granting the motion to dismiss. And the operative document on which the analysis of whether Mr. Oltmanns has met the pleading standards is the proposed second amended complaint. He amended the complaint once, as of right, under Rule 15, and then filed a motion to amend the complaint again, attaching the second amended complaint as a proposed amended complaint. So the, but the question again boils down to whether his proposed second amended complaint sufficiently alleges facts underlying each of these claims, the breach of contract and the breach of the duty. But it also incorporated here is evidence of record, which is important in explaining some of his allegations in the complaint. And the defendants, Mr. Oltmanns has submitted evidence of record as an attachment to the complaint, the original complaint, and also the defendants have submitted a lot of evidence of record explaining Mr. Oltmanns allegations. So the central question underlying both of these claims is whether the seniority plan applicable to clerks and checkers and incorporated into the contractual documents at issue here, whether it applies to Mr. Oltmanns and whether he should be granted seniority according to that plan. The seniority plan is a part of the contract, it's part of the collective bargaining agreement. The other- Counsel, can I stop you a little bit there? Feel free to discuss whatever you're about to discuss, but I can tell you from my perspective, the issue I'm more concerned about is the allegations or the district court's position that the allegations were insufficient on the breach of the fair representation prong and less on the contract prong. So if you could focus on that for me, that would be very helpful. I will move in that direction right now. I'm only speaking for myself, not my colleagues. Sure. I can zip back to the breach of contract right away in just a second, but I'll turn to the breach of duty of fair representation, which I think is the more transparent claim and the one more supported in the record as having been pled appropriately under rule eight standards as interpreted by the courts. So the basic understanding in addressing this in a pleading standard is that, or in a substantive review, is the union cannot arbitrarily ignore or give only perfunctory review to a grievance. And the grievance Mr. Oatman filed was addressing this seniority plan issue and ours. Can't arbitrarily ignore or give only perfunctory review. The union cannot employ fraud, deceit, dishonest conduct, and the union cannot be discriminatory. Now, under the pleadings that are out there, in the second amended complaint, proposed second amended complaint, Mr. Oatman's pleads that the union deceived him in his grievance. There was never a formal decision explaining to him the rationale of their decision, except for the fact that it was not being considered further. It was tabled because of impending litigation. There was no... The counsel. So there's two things there that you just said in that sentence that I want to unpack. One is you said they deceived him. Where is the allegation that the union knew that there was no litigation as opposed to making an honest mistake or believing there was litigation, but in fact there was not? That's number one. And then the second thing is, how do we then make that link that the grievance committee who made that call is separate and apart from the union, which was supposed to represent Mr. Oatman's here? The grievance committee, as claimed by the defendants, is the seniority board. The seniority board handles issues under the seniority plan. And the seniority board made this decision. It's not separate from the union. It is the union. This is part of the problem. Your complaint never mentions the seniority board at all. Your complaint mentions the grievance committee. And the grievance committee, as you note, is made up of half members of the union and half members of the Stephen Orr organization, and then some others. Where's the allegation that the union members were the ones that made the decision to table, that they were the ones in control? In other words, how do we not know, and how is it not plausible that the union members were screaming up and down, hey, don't table this thing, don't do this, and were either outvoted or outshouted down or whatever? There are two members from the union on the seniority board or the committee. There are two members of the corporation, the company, the employer on the committee. It could not have been tabled without consent of the union. So the union acted, and the union told us- How do we know that? Or is that in the complaint? It's not in the complaint. Now, Mr. Oldmans did plead that it was the grievance committee that was addressing his claim. Right. Apparently, the employer says no. It was the seniority board. We'll accept that for the purposes of the motion and this appeal. I know that, but our standard of review is based on the complaint, and you're right, the attachments to the complaint in some instances. And I do argue, Your Honor, that the standard of review is based on not only the complaint, but the evidence of record, and all the evidence of record. We didn't put in the complaint, the complaint was not drafted with much of the evidence of record that the employer placed in the record, placed the seniority plan in the record, placed the contract documents into the record, attempting and doing, and explaining through the declaration of Frank Ryan, and attached to one of their motions to dismiss, that would be document 10-1, explaining this entire contractual relationship. So that's now a part of the record. It's extrinsic evidence addressed by the district court. What about plausible, but counsel, what about plausible factual allegations of deception, or, because you used the word deceived, so where's the plausible factual allegations, not just legal conclusions, that this was not an honest mistake or a belief that the union had, but in fact, was a ruse to deny Mr. Ullman's, what he was entitled. Those are paragraph 31 and 32 of the proposed second amendment complaint, quote, at the hearing, Mr. Ullman's was told by the PGC, we now know it's the seniority board, that the issue would be, quote, tabled due to pending litigation. 32, there was no pending litigation regarding this matter. Right, right, there's no doubt that there wasn't, but we take that as a given. But I guess my question is, what evidence is there that that was deceptive, or they did not actually believe, or they knew there was no pending litigation, and yet tabled it? Well, one evidence is that the defendants have not denied it. And they could have come forward with an answer and denied it, but they didn't. We're in a 12B6, that's before the answer. Yes, it is. It's a very strategic decision by the defendants not to file an answer and have to deny that, but, or admit it. But the other, what I'm relying on, Mr. Ullman's is relying on, is the court construing the evidence in a manner in his favor. He has alleged that a statement was made to him as the reason for tabling and not considering his evidence, his grievance, and that statement was false. He's out of the grievance at that point, having been given a false reason for doing it. Presumably, I think you can construe it to be an intentional statement. Certainly, it'd be hard to construe it as an unintentional statement. Looks like my time is up, and- Thank you, we'll hear from you in rebuttal. Thank you. Good morning, your honors. If it may please the court, I'm Lawrence Goodman. I represent the International Law Insurance Association, Local 1475, which, as you've heard, is the clerks and checkers local, representing workers who do that work in the Port of Savannah, Georgia. I guess just right off the bat, I will, just to address the issue and the confusion, I think, over the seniority board court grievance committee. The complaint itself identifies the court grievance committee or the PGC as the entity that heard the grievance. It was, in fact, the seniority board, and that's consistent with the documents, which were attached to our response to the, excuse me, the motion to dismiss, which really, there's no dispute. I don't think about that. And the issue before the court, ultimately, is whether an appellant properly pled that the employer breached some part of the collective bargaining agreement, and the union somehow breached its duty of fair representation. And we believe the district court was correct in concluding that the plaintiff had not plausibly alleged violations of either. With respect to the duty of fair representation claim, as the Supreme Court made clear in Vaca v. Sipes and Alba v. O'Neill, there's a three-pronged test, and each of the prongs are independent. A DFR plaintiff has to prove either that the union's conduct was arbitrary, was discriminatory, or wasn't bad faith. And again, those are three separate prongs. As to the discriminatory and bad faith prongs, the case law requires some allegation of facts supporting the claim that the union's conduct was discriminatory. Mr. Goodman, can I ask you a question? I'd like the other lawyers to answer this question too, so I'm asking it to everybody. Which is, is this a Rule 8 case, or is this a Rule 12 case? Did the district court dismiss this case because it could not understand the complaint, that the complaint was just incomprehensible and didn't state a claim for that reason? Or did the district court really say that these claims fail in the merits? I believe, sorry, I believe the district court said these claims fail on the merits because they don't state a plausible claim. There are no allegations, so in the context of a discrimination claim, there should be, one would expect, factual allegations that Mr. Oatmans was treated differently than other individuals because, perhaps, of his membership in a protected class. With respect to bad faith, you would expect to see factual allegations concerning the union's motive. For example, had Mr. Oatmans ran for office against the incumbent president, and the failure to process his grievance with some type of retaliation, that would be an example of bad faith. But what I think the appellant is arguing here is that the union acted arbitrarily, and that, in and of itself, is evidence of discrimination and bad faith, and that's simply not the law. With respect to the arbitrariness prong, what the Supreme Court said in Alpert v. O'Neill is that this is really an objective look at whether the union's conduct was essentially inexplicable. It was so irrational, and so the entirety of the factual allegations about the handling of the grievance was that Mr. Oatmans appeared at a hearing and was told there was pending litigation, and it was tabled. That could just as easily have been an error on the part of either Mr. Oatmans, as far as what he understood he was told, because there's nothing in writing. That could have been an error on the part of the seniority board about the possibility of pending litigation. Counsel, I guess the question is, is that a rational decision, assuming the seniority board's decision is attributable to the union, which I think is another step that is potentially problematic for the complaint, but assuming that action is attributable to the union, is it irrational to table the decision if that very decision is under pending litigation? If it was under litigation, well, everything's always fact-specific, Your Honor, but if there was pending litigation, it might not have been. Right, so assuming without an allegation that the union knew that was not true when it said it, how can we say that that's an irrational decision, I guess, is my question. I don't think you can. And I also think the court can apply the words of Iqbal and Twombly, it's common sense that what sense would it have made if, in fact, the union and or the employer was out to get Mr. Altman's? Why would they just not have denied the grievance outright? It doesn't make sense that the tabling would have been the route they took. And, you know, I also note that this meeting occurred in February 18th. I guess it's a couple of years ago already. And the lawsuit was not filed for six months. And so there's no allegation that in that intervening time that Mr. Altman's did anything to bring to the attention of the seniority board. Hey, why do you say that there's pending litigation? There's no pending litigation. What about the allegation of the failure to assert defenses? Well, again, there's no facts plan about that. I don't know what defenses, frankly, he's referring to. Is that, in other words, is that conclusory? In other words, without knowing what defenses there are, it's impossible for us to know whether it was rational or irrational in which to, for the union to have asserted it or not asserted it? That's correct, Your Honor. And I think, so, and I anticipate Ms. O'Connor will address this as well, but I, with respect to the alleged breach of the collective bargaining agreement. What, what's in the record is a historic, with the clerk in checker seniority plan. Okay, can I ask you about, I'm gonna ask you because I, I, I'm not allowed to interrupt Ms. O'Connor in her first two minutes. So I'll ask you and hopefully she addresses it. Your, your, your opposing counsel cites the transportation and communication employees union case from the Supreme Court. In which the Supreme Court, interestingly described a collective bargaining agreement as not an ordinary contract, but in set, in, in other words, as a general code to govern a myriad of cases which the draft, draftsman cannot wholly anticipate. Essentially, it called it a new common law between the union and its workers. And said, quote, in order to interpret such an agreement, it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage, and custom pertaining to all such agreements. Given that, do we not look into interpret this contract, unlike we would maybe for other contra, regular contracts, to the customer practice that was alleged here, that that they were giving seniority to the deck and dockman workers for the checker work? Well, I, I, I guess I'd say as a, as a union lawyer who's made that argument in any number of arbitrations yes, past practice can play a role in interpreting a collective bargaining agreement. But again, as in, in, in the Seventh Circuit case I cited, I think there's a good description that, or explanation that past practice, again, is a very fact specific issue that, and, and there are no facts pled other than the conclusory allegation that there's a, quote, past practice. Well, when was it? What were the circumstances? What is the impact of the intervening 2013 deck and dock agreement on anything that may or may not have happened before then? And where are the specifics about, other than the general claim that there's a practice, who are all these other individuals who somehow got clerk seniority based on deck and dock work? Thank you. Good morning. Good morning. May it please the court, I'm Tracy O'Connell on behalf of Georgia Stevedore Association or GSA and, and I'll pick up where Mr. Goodman left off and, and try to respond to your question, your honor. I don't disagree that court practice or practice or custom and usage can be used to interpret the collective bargaining agreement. But what we're talking about here is they're saying there is some unwritten, undefined, and as Mr. Goodman said, not pled sufficiently, practice that was breached. There wasn't a written agreement that we're trying to interpret and apply it. It's some unwritten oral practice out there that the employers apparently breached. And, and that I don't believe is sufficient in this context of a hybrid claim. We needed to have been put on notice and the Mr. Oldman's needed to have said, this is the exact thing that the employer knew and breached, knowingly breached, and, and they can't do that here. You know, the three agreements that are part of the record are very separate and distinct agreements. The clerk and checker CBA and the clerk and checker seniority plan have nothing to do with what deck and dock workers do. They're two different trades. And Mr. Wolf did a nice job explaining that for you all. The deck and dock group came into existence eight years after the clerk and checker CBA and clerk and checker seniority plan. And it made specific reference that it is modifying the clerk and checker CBA. So these three agreements, none of them contain any information whatsoever about crossover hours, which is what Mr. Oldman's ultimately wants. So I think in this case, going back to where we are, which is did the proposed second amendment complaint include enough information to set forth a breach by the employers? And the answer is it didn't, you know, the district court judge did a nice job of laying out that the only difference between the first amendment complaint, which I think Mr. Altman's can counsel, counsel, if it can be based on poor practice, and I appreciate you and Mr. Goodman stating that it can because it appears that it can. I'm just confused as to how much more specific you would expect a plaintiff to be to the allegation in paragraph 13 of the proposed second amended complaint. Quote, passport practice has been that when a person makes their hours as a deck and dockman, those hours are transferable to clerk and checkers in regard to seniority classification. What more specifications could you possibly need at the pleading stage? I'm not talking about a summary judgment and a trial, but the pleading stage. How's that not a custom and usage that interprets the etc at the end of that particular provision in the contract, or at least the memorandum, which refers to seniority but doesn't appear to have a specific plan of what that seniority is going to be, or any number of things that are sort of out there in these three agreements? I think what needed to have been said here or made clear is what this court practice was after 2013 when the memorandum of understanding came into effect for the deck and dock, which specifically said, yes, we're using the clerk and checker CBA, except as set forth herein and as set forth in the memorandum of understanding, it specifically has no seniority and it has a totally different dispatch. So I think they needed to have said or made clear that these court practices or these instances when people allegedly got crossover hours occurred after deck and dock came into existence. Because if you go back and look at the clerk and checker agreement- Counsel, you don't think that we can read that into the complaint? In a few paragraphs down in 18 and 19, the only hours that he discusses as having been over and non-transferable or not counted are those from the 2014-2015 fiscal year or contract year, and those from the 2015-2016 contract year, which are clearly after 2013. And those are his hours, but he doesn't provide any factual allegations of anybody else or it ever happening to anybody after 2013 when the deck and dock came into effect and when those hours would have been assigned for deck and dock work. And if you go back and look at the clerk and checker agreement, it specifically says 700 hours under this agreement, the clerk and checker agreement. So I do think they needed to provide more ways or more information as to what's been relevant, not just for his hours, but for anybody else that this supposedly happened to after 2013. What case law do you have that we read complaints that parsimoniously, especially we'll review it in the light most favorable to the non-moving party? Well, I agree it has to be read in his favor. But again, simply just saying there's a poor practice out there. If that's the new standard, there will never be an ability for an employer to move to dismiss because there would always be a fact question if an employee just says, well, there was a poor practice, but I'm not going to say anything beyond that. It robs the employer of the ability to answer the complaint and know what they're being charged with and know what specifically they did wrong. So I do think that there isn't enough in this document. And if this is the standard going forward, they need to have more information as to what specifically was violated in that practice. Judge Martin, can I ask one more question? Yes, please. When you made these arguments below in your motion to dismiss, did the plaintiff respond by citing to any of the documents that you attached with your motion to dismiss? Did the plaintiff respond by citing anything in poor practice? What did the plaintiff say in response to your motion to dismiss? He did not because there's nothing there to say. I appreciate that Mr. Oltman's conceded there is no specific provision anywhere. And so his response was basically there's this generic court practice that's not defined or look at everything globally. But again, even when you look at it globally, there's no guide or roadmap for the employee to figure out what they're saying. But specifically that the plaintiff didn't respond and cite to this etc portion or anything like that. Were any of those arguments made below? The etc argument I believe was made below or a reference was made to it. But it was not as fleshed out as it is in front of you all. Thank you, Your Honor. Thank you, Ms. O'Connell. And we'll hear from Mr. Wolfe. Thank you, Your Honor. Judge Brasher, to answer your question about whether this is a rule eight or rule 12 case, that's a very important question. And it is indeed a rule eight case. On page 16 of the order, document 37, based on the court says, based on the analysis above, the court finds that the complaints do not plausibly allege that ILA breached its duty of fair representation or that GSA breached the collective bargaining agreement. As a result, plaintiff's hybrid section 301 fair representation claim fails. Thus, the court denies the leave to amend as futile and grants the motion to dismiss. This is a rule eight case. And coming back to Judge Lux. Counsel, sorry, just to follow up quickly. On page five of the order, the standard of review section, quote, defendants move for dismissal of plaintiff's amended complaint pursuant to federal civil procedure 12B6. Later on, next page, page six, a court reviewing the sufficiency of pleadings under 12B6 must accept the allegations and goes on to then cite Twombly and Iqbal, which are rule 12 cases, and apply them. How can we read the order and interpret it as a rule eight as opposed to a rule 12 case? Well, the standards applied, Your Honor, were rule eight to dismiss it under 12B6. And that's where the focus of the briefing is. That, in fact, the pleading standards were met, and therefore, the case should not have been dismissed under 12B6. But to address your concern about sufficient allegations of bad faith, I'll also go to the district court order on page, page, page 13, and quote, the district court. The district court concluded Mr. Oatman's failed to allege, quote, that the 1475, local 1475 intentionally misled Mr. Oatman's. Or that Mr. Oatman's 1475 even knew that the exertion of the non-existent claim was false. Oh, here it is. The quote is from the court. The second amended complaint, quote, implies that the local 1475 representative on the Port Grievance Committee and those represented acting in bad faith, because non-existent litigation was used as a pretext to set aside his grievance. The court itself recognized that the pleading was sufficient to allege bad faith on behalf of the union. Counsel, the next sentence is plaintiff merely states that this action was done in bad faith and does put forth subsidiary facts, merely states that, and does put forth, and it should say doesn't, but puts forth subsidiary facts speaking to any ILA representative's state of mind. Plaintiff supplies no factual detail to support his conclusory allegations, right? Well, again, there's not a lot of factual detail, Your Honor. I admit that, acknowledge it, but the inferences in favor of the plaintiff pull plaintiff's second amended complaint out of the realm of the implausible to the plausible. It might be a thin slice to offer, but it's there. He alleged that a false statement was made, and based on the false statement, his grievance was terminated and not considered further. I think it's entirely reasonable for the court to assume that that false statement was intentional and not haphazard. Opposing counsel, Mr. Goodman, conjectures that the committee or the seniority board could have done this, they could have meant that. Well, that's not the standard on which this pleading just be judged. The pleading stands for itself. It doesn't matter what conjecture Mr. Goodman might apply to the seniority board of what could or could not happen. Plaintiff puts it out there, and it's a strong allegation. It should be construed as intentional. Now, further in discovery of the case, can explore what exactly was meant. But at this stage, I can tell you plaintiff construed it as intentional. In the first place, he knew there was no pending litigation. He knew when they were coming at him that it was false. And he knew when they were coming at him that it was intentionally false. But I think the pleadings, more importantly, can be construed to get there. And I urge the court to do so. There is no question that on the breach of contract issue, if I can move to that, that the GSA knew what was going on. In response to the pleadings on the breach of contract issue, both the GSA and the union came back in the first few pages of their motions, for to dismiss, pages one through three of both motions, and laid out the full contractual underpinning of the case. They knew it was a breach of contract issue. They knew the seniority plan was the focus. And they laid out the seniority plan, the local district plan, and the local plan and the district plan as the framework in which they were going to have this case analyzed. They knew it was a breach of contract that was being alleged. They didn't know the details. Excuse me, I'm running over, so let me hand it back to the court. All right, thank you for the presentation to all counsel. And we will take the case under advisement. We appreciate it. Thank you, Your Honor. Thank you.